UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
NOV X 2 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

ROBERT TISCARENO,                )
                                 )
    Plaintiff,                   )
                                 )
v.                               )   No.   MAGISTRATE JUDGE MASON
                                 )        05C 6299
GARTNER BUICK, INC.,             )
                                 )
    Defendant.                   )
                                          JUDGE ASPEN

## COMPLAINT

### I. Preliminary Statement

1. This is an action for damages brought by an individual consumer against the defendant for violations of The Truth in Lending Act 15 U.S.C. § 1601(a).

### II. Jurisdiction and Venue

2. Jurisdiction of this Court arises under 15 U.S.C. § 1601(a) and 28 U.S.C. §1331. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

### III. Parties

3. Plaintiff, ROBERT TISCARENO ("Plaintiff"), is an individual who is an Illinois resident.

4. Defendant, GARTNER BUICK, INC., ("Seller"), is a business corporation qualified to do business and regularly conducts business in the State of Illinois, and is a corporation of the State of Illinois. Seller is also a merchant involved in the sale of commercial goods to the public, including new and used vehicles.

### BACKGROUND

5. On or about December 18, 2004, Plaintiff purchased from Seller a 2005 Buick

1

Terraza ("Terraza"), Vehicle Identification No. 3C4FY4BB44T321385, for valuable consideration. (See copy of Plaintiff's Retail Installment Contract, attached hereto as Exhibit "A").

6. The price of the Terraza as listed by Defendant, <u>excluding</u> sales tax, document fees and finance charges, totaled $36,644.00.

7. At the time of Plaintiff's purchase of the Terraza, Plaintiff traded-in a 1997 Dodge Grand Caravan ("trade-in vehicle") to apply towards the purchase of the subject vehicle.

8. Seller informed Plaintiff that Plaintiff was receiving a trade-in allowance of $8,942.00 for the trade-in vehicle.

9. Seller recorded the $8,942.00 for the trade-in vehicle on the Retail Installment Contract for the Terraza.

10. Seller recorded on the Retail Installment Contract that on December 18, 2004, Plaintiff still owed $8,942.00 for the trade-in vehicle.

11. Seller prepared the Retail Installment Contract.

12. Seller misrepresented to Plaintiff and to the lender that $8,942.00 was the actual amounts Plaintiff received for the trade-in vehicle as the trade-in vehicle was actually worth significantly less then the amount represented.

13. In turn, Seller sold the Terraza to Plaintiff for more then what the vehicle was ordinarily worth and over inflated and misrepresented the actual price of the Terraza on the retail installment contract.

14. Seller over inflated the price of the Terraza by a proportional amount to the amount that Seller over inflated the trade allowance on the trade-in vehicle.

15. In doing so, Seller failed to disclose that it had rolled into the financing for the Terraza debt from the trade-in vehicle.

16. Seller did not identify on the retail installment contract that it had rolled debt into the new financing agreement and that said amount was an "amount financed" per the Truth in Lending Act.

17. The aforementioned sale of the vehicle was a financed transaction in that in order for the Plaintiffs to purchase the vehicle, a person or entity must have extended credit to them.

18. Seller took a credit application from the Plaintiff and prepared the disclosures required for compliance with the Truth in Lending Act.

19. Seller misrepresented the value of the trade-in vehicle in the Truth in Lending Act Disclosure.

20. Seller misrepresented the value of the trade-in vehicle in an effort to secure financing on behalf of Plaintiff by making it appear that Plaintiff was not rolling debt into the purchase of the subject vehicle. Seller did this solely in an effort to consummate the transaction in order to make a profit off of the sale of the subject vehicle.

**COUNT I**
**VIOLATION OF THE TRUTH IN LENDING ACT**
**SELLER**

21. Plaintiff re-alleges paragraphs 1- 20.

22. The above acts constitute a violation of The Truth in Lending Act 15 U.S.C. § 1601(a).

   WHEREFORE the Plaintiff requests that the court:

   a. Award statutory and actual damages available under the Truth in Lending Act 15 U.S.C. § 1601(a).
   b. Award Plaintiff's Attorneys fees and court costs.

  c. Grant any other relief that this Honorable Court deems just and appropriate.

## JURY DEMAND

\*   Plaintiff demands trial by jury on all issues in this action.

Respectfully Submitted,<br>
**ROBERT TISCARENO**<br><br>
By: _____<br>
Attorney for Plaintiff

KROHN & MOSS, LTD.
Attorneys for Plaintiff
120 W. Madison Street, 10th Floor
Chicago, IL 60602
(312) 578-9428
Atty. I.D. 33599

**EXHIBIT A**

**RETAIL INSTALLMENT CONTRACT — MOTOR VEHICLE — SIMPLE INTEREST**

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ |
|---|---|---|---|---|
| 7.90 % | $ 6070.96 | $ 23091.52 | $ 29152.08 | $ 43751.08 |

**Your payment schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 404.89 | monthly beginning 02/01/2006 |
|  | $ |  |

**Security:** You are giving a security interest in the goods being purchased and in any moneys, credits or other property of yours in the possession of the Assignee, on deposit or otherwise.

**Late Charge:** If any payment is ten (10) days late, you will be charged: i) 5% of the installment if the installment is in excess of $200.00; or ii) $10.00 if the installment is for $200.00 or less.

**Prepayment:** You have the right to prepay the unpaid balance in full or in part at anytime without penalty.
See your contract terms below and on the reverse side for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties and further information about security interests.

### Itemization of Amount Financed

| | |
|---|---|
| Cash Price | $ 36644.00 |
| Less Cash Downpayment | $ 14500.00 |
| Value of Trade $ 8542.00 Trade-In | |
| Lien Payoff $ 7542.00 | |
| Net Trade To: | $ 1000.00 |
| Amounts Paid on Your Account | |
| Unpaid Balance of Cash Price | $ 21144.00 |
| **Amount Paid to Others for You** | |
| **WE MAY BE RETAINING A PORTION OF THIS AMOUNT** | |
| Unpaid Balance Due on Trade-In | $ N/A |
| 1997 DODGE GRAND CARAVA | |
| Year, Make, Model of Buyer's Trade-In (Paid to) | |
| *Insurance Companies: | |
| N/A | $ N/A |
| N/A | $ N/A |
| N/A | $ N/A |
| Public Officials (Licenses, Title & Taxes) | $ 1884.00 |
| To GARTNER BUICK | $ 59.52 |
| To N/A | $ N/A |
| To N/A | $ N/A |
| To N/A | $ N/A |

Buyer(s) ROBERT M TISCARENO 2491 LAKESIDE DRIVE AURORA IL 60504
(Names) (Residence Address) (City) (State) (Zip)

Buyer(s) N/A

Seller GARTNER BUICK INC. 4333 OGDEN AVE. AURORA IL 60504
(Corporate Firm or Trade Name) (Business Address) (City) (State) (Zip)

Seller hereby sells and Buyer or Buyers, jointly and severally, hereby purchase the following motor vehicle with accessories and equipment thereon for the deferred payment price, and on the terms set forth in this contract. Buyer acknowledges delivery and acceptance of said motor vehicle in good condition.

| New or Used | Year | Make of Vehicle | Model | Body Style | No.Cyl. | Serial Number | Body Color | Top Color | Key No. |
|---|---|---|---|---|---|---|---|---|---|
| NEW | 2005 | BUICK | TERRAZA | 4 DR FWD | 6 | 5GADV33L05D186378 | PLATINUM METAL | MED GRAY | S3038 |

N/A
N/A

**Buyer Promises to pay to the order of Seller at the offices of:**
HARRIS BANK BARRINGTON, NATIONAL ASSOCIATION (Assignee) located in BARRINGTON, Illinois

the Amount Financed shown above together with a Finance Charge on the principal balance of the Amount Financed from time to time unpaid at the rate of 7.90 % per annum, from date until maturity in 71 installments of $ 404.89 each and a final installment of $ 404.89 , beginning on FEBRUARY, 1ST, 2006 and continuing on the same day of each successive month thereafter until fully paid. All payments shall be applied first to accrued Finance Charge and the balance to principal. The Finance Charge has been computed on the scheduled unpaid balances of the Amount Financed on the assumption that all scheduled installments will be paid when due. Guarantor, if any, guarantees collection of all amounts due under this contract upon failure of the Seller to collect from the Buyer named herein.

**SECURITY INTERESTS:** Seller is granted a purchase-money security interest in the motor vehicle described above and all accessions under the Illinois Uniform Commercial Code until the Total of Payments and all future indebtedness for taxes, liens, repairs and insurance premiums advanced by holder hereunder are paid in full. Buyer grants assignee the right of set-off or lien on any moneys, credits or other property of Buyer in possession of the Assignee, on deposit or otherwise, excepting IRA or similar deposits. Seller is also granted a security interest in any premium rebates for insurance or service contracts, if financed hereunder, in the proceeds of any insurance or service contract on the motor vehicle, and in the proceeds of any credit life and/or accident and health insurance financed hereunder, until all amounts due under this contract are paid in full.

**ACCELERATION:** Buyer agrees that (1) if Buyer shall default in the payment of any installment of the Total of Payments or any other indebtedness due hereon; or (2) Buyer shall fail to perform any agreement or warranty made by Buyer herein; or (3) if the motor vehicle shall be lost, stolen, substantially damaged, destroyed, sold, encumbered, removed, concealed, attached or levied upon; or (4) if the motor vehicle shall be seized or forfeited for violation of any law or ordinance, State, Federal or Municipal; or (5) a proceeding under any bankruptcy or insolvency statute shall be instituted by or against Buyer or Buyer's business or property, or Buyer shall make an assignment for benefit of creditors, or (6) if Buyer shall die or be adjudged incompetent; or (7) if holder shall, for reasonable cause, deem itself insecure; or (8) if Buyer shall fail to keep the motor vehicle fully insured for the entire term of this contract, the holder may declare all unpaid installments of the Total of Payments and all other indebtedness secured hereby immediately due and payable, without notice or demand.

**PREPAYMENT:** THE BUYER MAY PREPAY IN FULL OR IN PART THE UNPAID BALANCE OF THE CONTRACT AT ANY TIME WITHOUT PENALTY.

**DELINQUENCY CHARGE:** If any payment is ten (10) days late, you will be charged: i) 5% of the installment if the installment is in excess of $200.00; or ii) $10.00 if the installment is for $200.00 or less. In addition, Buyer agrees to pay reasonable attorneys' fees, costs and expenses incurred in the collection or enforcement of the debt or in realizing on the collateral. Buyer agrees to pay Finance Charges after maturity of the final installment, or after acceleration upon default, at the Annual Percentage Rate stated herein so long as there exists any uncured default hereunder, all without relief from valuation or appraisement laws.

**INSURANCE AGREEMENT:** Motor Vehicle Damage or Loss Insurance is required by Seller. (**Buyer may choose the person through whom the insurance is to be obtained.** If such insurance is to be obtained through Seller, the cost for a term of _____ months will be $ N/A

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT**

**Credit Insurance** is not required by Seller nor is it a factor in approval of the extension of credit. No credit insurance is to be provided unless the Buyer signs the appropriate authorization below. Group Credit Insurance is available for the term of the credit upon acceptance by insurer at the following costs:

Credit Life Insurance $ _____ Credit Disability Insurance $ N/A

I desire Credit Life and Disability Insurance   I desire Credit Life Insurance only   I DO NOT want Credit Life or Disability Insurance

| (Age of Insured) | (Signature) | (Date) | (Age of Insured) | (Signature) | (Date) | (Signature) | (Date) |
|---|---|---|---|---|---|---|---|

| (Age of Insured) | (Signature) | (Date) | (Age of Insured) | (Signature) | (Date) | (Signature) | (Date) |
|---|---|---|---|---|---|---|---|

SEE REVERSE HEREOF FOR INFORMATION ON POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM.

### NOTICE OF PROPOSED GROUP CREDIT LIFE INSURANCE

If a charge is made above for credit life insurance and if such insurance is to be procured by assignee, the undersigned takes notice that the decreasing term insurance written under a Group Credit Life Insurance Policy is to be purchased on the life of the Buyer or Buyers who signed above requesting it, subject to acceptance by the Insurer and issuance of a certificate by _____ (Insurer) _____ (Home Office Address) _____

The amount of premium is shown above. The term of insurance will commence on the date of this contract and expire on the originally scheduled maturity date of the in-debtedness. The initial amount of insurance will be equal to the initial indebtedness and will decrease as any payment is made on the indebtedness in an amount computed by multiplying the amount of the payment by the ratio of initial insurance over the initial indebtedness. The proceeds of any insurance paid will be applied to reduce or extinguish the indebtedness. If insurance is terminated prior to the scheduled maturity date of the indebtedness, any premium refund will be paid or credited promptly to the person entitled thereto. Refund formula is on file with the Director of Insurance and with creditor. All of the foregoing is subject to the provisions of the certificate of insurance to be issued.

Other insurance: _____ (Type of Insurance) _____ the cost for a term of _____ months will be $ _____

BUYER AGREES THAT THE PROVISIONS ON THE REVERSE SIDE HEREOF SHALL CONSTITUTE A PART OF THIS RETAIL INSTALLMENT CONTRACT AND BE INCORPORATED HEREIN. If this contract evidences the sale of a used motor vehicle (1) Buyer acknowledges receipt of the original or a true copy of the "Buyer's Guide" form displayed by Seller on the side window of the used vehicle; and (2) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS USED VEHICLE IS A PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.
NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
DOCUMENTARY FEE: A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 1992, WAS $40. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $40 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.
NOTICE TO BUYER: 1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge. Buyer acknowledged receipt of a fully completed copy of this contract executed by both Seller and Buyer. Guarantor, if any, acknowledged receipt of completed copies of this contract and of Explanation of Guarantor's Obligation.
CO-BUYER: A Co-Buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the vehicle or (2) is a parent or spouse of the Buyer, or (3) will be listed as an owner on the vehicle's title. By signing below, (1) I confirm that I will actually receive possession of the vehicle or will use it, or that I am a parent or spouse of the Buyer, or that I will be listed as an owner on the vehicle's title; (2) I agree to be primarily obligated under this contract; and (3) I consent to the Creditor having a security interest in the vehicle.

Dated: _____

Seller: _____

By: _____ TITLE

Guarantor _____

I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein.

Buyer(s) acknowledges receipt of a fully completed and executed copy of this Contract.

### RETAIL INSTALLMENT CONTRACT

Buyer _____

Buyer _____

INSTRUCTIONS: If parent, spouse, or other person who is or will be listed as an owner on the vehicle's title is a co-buyer, sign above. Other co-signers, sign on the Guarantor line.

Form HBB IFI-26 (Rev. 1/2000)

_____ Chicago, IL (All Rights Reserved) _____

## ADDITIONAL AGREEMENTS OF BUYER

1. Waiver of any default in the payment of any installment of the total due shall not operate as a waiver when due of any subsequent default. No extension of the time of payment or any other modification of the terms of this contract shall be binding on holder unless written consent thereto is given by an executive officer of holder. This contract shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns.
2. Buyer agrees to keep said motor vehicle fully insured against loss by fire, theft and collision for the entire term of this contract in companies acceptable to holder. Holder is authorized to purchase all insurance included in this contract, insurance coverages, other than required insurance, have been voluntarily contracted for by Buyer. Buyer may elect to purchase any required insurance from an insurance company, agent or broker of his own choice. If Buyer so elects, he shall furnish Seller with a policy or binder issued by a company acceptable to Seller on or before taking possession of the motor vehicle, and inclusion of Buyer's premiums in this contract is optional with Buyer. All policies procured by Buyer shall provide that loss, if any, shall be payable to Buyer and to the holder of this contract, as their respective interest may appear and a clause requiring insurer to give holder 10 days written notice of cancellation. In the event of the failure of Buyer to deliver a fully paid policy to holder at the times and in the manner provided for herein, such failure shall constitute an event of default and the event of cancellation or expiration of any policy during the term of this contract without procurement by Buyer within 10 days, such failure shall constitute an event of default hereunder. Holder shall have the option, but shall not be required, to procure such insurance for Buyer and to advance the premium therefor. Buyer hereby promises to pay any such premium with finance charge thereon at the annual percentage rate stated on the reverse side hereof as an additional indebtedness due hereunder. Buyer hereby assigns to holder the proceeds of all insurance on said motor vehicle including unearned premium refunds. In the event of default by Buyer hereunder, holder is authorized to cancel such insurance, receive and receipt for unearned premiums and to endorse any check or draft thereof made payable to Buyer. Any unearned premium received by the holder shall be credited to the final maturing installment of this contract except to the extent thereof providing the interest of Buyer and the holder, or either of them.
3. COLLATERAL PROTECTION INSURANCE. Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.
4. Buyer shall not use or permit said motor vehicle to be used in violation of any law or ordinance, State, Federal, or Municipal, Buyer shall not sell, lease, encumber or place said motor vehicle in any other person's possession or remove it from the State of Illinois without the written consent of the holder of this contract. Buyer shall not use said motor vehicle for hire or as a taxi. Buyer shall keep said motor vehicle free from all mechanic's liens, tax liens and all other liens.
5. Upon the occurrence of any event of default, the holder of this contract shall have the rights and remedies provided by Article 9 of the Illinois Uniform Commercial Code, including the right to take immediate possession of the motor vehicle, with or without judicial process, and for such purpose, to enter into or upon any premises where said motor vehicle may be, and to sell the same at any public sale or at any private sale after the time and place of any public sale thereof or of the time after which any private sale or other _____ Buyer to purchase the same and to buy it at a public sale; and (b) to

AUG. 8. 2005 4:05PM CAR DEPT FAX GARTNER

BUICK HYUNDAI SAAB
(630) 851-2500

**VEHICLE BUYER'S ORDER**
NEW ☒ USED ☐ DEMO ☐ EXEC. DRIVEN ☐

CAR NO. 195 ZIP. 5
STK # B25132
RES. TEL. (630)978-2827
BUS. TEL. (630)978-2827

DATE 12/18/2004
PURCHASER'S NAME ROBERT M TISCARENO
ADDRESS 2491 LAKESIDE DRIVE   CITY AURORA IL   ZIP 60504

| YEAR | MAKE | MODEL | | | V.I.N. 5GADV33L050165376 | |
|---|---|---|---|---|---|---|
| 2005 | BUICK | TERRAZA | | | | |
| COLOR | TRIM | KEY # S3038 IGN S3038 TRUNK S3038 | | BODY STYLE 4 DR. FWD | SALESPERSON HUGH B SCHLENK | SALES # 538 |
| PLATINUM METAMED GRAY LEATH | | | | | | |

| | | |
|---|---|---|
| SELLING PRICE | | 36644.00 |
| DOCUMENTARY SERVICE FEE | | 53.52 |
| SALES TAX (% OF 27753.52) | | 1804.00 |
| LICENSE, LICENSE TRANSFER, TITLE, REGISTRATION FEE | | 80.00 |
| TOTAL CASH PRICE | | 38581.52 |
| TRADE-IN ALLOWANCE | 6942.00 | |
| LESS BALANCE OWED | 7942.00 | |
| NET TRADE-IN ALLOWANCE | 1000.00 | |
| DEPOSIT | 12000.00 | |
| TOTAL DOWNPAYMENT | | 13000.00 |
| UNPAID CASH BALANCE DUE ON DELIVERY | | 25581.52 |
| REBATE(S) | | 2500.00 |
| TOTAL DUE | | 23081.52 |

DEALER INSTALLED OPTIONS NOT WARRANTED BY MANUFACTURER
**INCLUDED IN SELLING PRICE**

| | | |
|---|---|---|
| PACKAGE A - Rust, Sound, Paint, Interior | $ | N/A |
| PACKAGE B - Rust, Sound, Paint | $ | N/A |
| PACKAGE C - Rust, Sound | $ | N/A |
| OTHER | | |
| | $ | |
| | $ | N/A |
| | $ | N/A |

= INCLUDES COOK CTY FLAT TAX $ 0.00

**TRADE-IN INFORMATION**

**CERTIFICATION OF TRADE-IN INFORMATION**
Purchaser certifies that the information about my trade-in is true and accurate and that the trade-in is not now and never has had a "rebuilt" or "salvage" title. Purchaser further certifies that all outstanding liens are satisfied and that he/she will pay the difference in cash within three days of demand if the payoff information is incorrect.

Customer Initials: [signature]
Mileage (Insid): 87354

| YEAR 1997 | MAKE DODGE |
|---|---|
| MODEL GRAND CARA | V.I.N. 1B4GP44R5VB205008 |
| BALANCE OWED TO | |
| ADDRESS | |

**CONSEQUENTIAL AND INCIDENTAL DAMAGES** - Purchaser shall not be entitled to receive from GARTNER BUICK-HYUNDAI-SAAB any consequential and incidental damages, including but not limited to damages to property, damages for loss of use, loss of profits or income or any other consequential or incidental damages whether liability is based on breach of warranty, contract or tort, strict liability or any other statutory or common law theory of liability.

**CONDITIONS AND DISCLAIMER OF WARRANTIES**
Purchaser agrees that this Order includes all of the terms and conditions on both the face and reverse side hereof, that this Order cancels and supersedes any prior agreement between the parties concerning the vehicle and, as of the date hereof, comprises the complete and exclusive statement of the terms of the agreement relating to the subject matters hereby. Purchaser, by execution of this Order acknowledges that Purchaser has read its terms and conditions, that Purchaser understands that upon acceptance by Seller, this Order is a binding contract to purchase the vehicle enforceable according to its terms, and that the Purchaser has received a true copy of this Order.

Purchaser hereby authorizes any agent of Seller to apply for a corrected and duplicate certificate of title in Purchaser's name for the vehicle, if, for any reason, the lien in favor of the lending institution which financed the purchase of the vehicle, if any, is erroneously or inadvertently omitted from the original certificate of title issued to Purchaser. For this purpose, and for no other, any agent of Seller may, in Purchaser's behalf, sign Purchaser's name to any application or necessary documents for such corrected or duplicate certificate of title with like effect as though Purchaser had signed the title.

**DEPOSIT NOT REFUNDABLE**

Dated this 12th day of DEC 20 04.

[signature] Purchaser's Signature

ACCEPTED
GARTNER BUICK

By [signature] Authorized Representative

[signature] Purchaser's Signature

SELLER IS NOT RESPONSIBLE FOR ANY VERBAL AGREEMENT THAT THE SALESPERSON MAY MAKE OTHER THAN STATED ON THIS